UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **BERNIEDA DAVIS,** } | |
| } | |
| Plaintiff, } | |
| } | |
| vs. } | |
| } | CASE NO. 6:13-cv-513-SLB |
| **COUNTRY CASUALTY** } | |
| **INSURANCE COMPANY,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is currently before the court on plaintiff Bernieda Davis's ("plaintiff") Motion to Remand, (doc. 3)[1] and Motion to Strike, (doc. 9). Upon consideration of the record, the submissions of the parties, the relevant law, and the arguments of counsel, the court is of the opinion that both the Motion to Remand and the Motion to Strike are due to be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed her Complaint against Cotton States Mutual Insurance Company ("defendant" or "Cotton States Mutual")[2] in the Circuit Court of Marion County, Alabama,

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

[2] Though defendant is named in the Complaint as Cotton States Insurance, (*see* doc. 1-1 at 2), and is listed on the court's docket as Cotton States Mutual Insurance Company, defendant clarifies in its Response to Motion to Remand, (doc. 6), that its actual name is "COUNTRY Casualty Insurance Company," and that it is the successor in interest to "Cotton States Mutual Insurance Company," (*id.* at 4), the company that plaintiff has brought suit against.

on December 19, 2012. (*See* doc. 1-1 at 2.) The Complaint alleges that plaintiff was insured by defendant at all times relevant to her claims, and that she continues to be insured by defendant. (*Id.* ¶ 5.) It further alleges that the policy defendant issued to her provided coverage for fire loss to her dwelling, that she suffered fire loss, that she made a timely claim for coverage, and that defendant refused to provide coverage for her loss. (*Id.* ¶¶ 5-9.) Based on these facts, plaintiff brings two counts against defendant: (1) breach of contract, and (2) bad faith. (*Id.* ¶¶ 10-22.)

Plaintiff claims that on January 1, 2013, she "sought and obtained service of process on [defendant] . . . through Cotton States' registered agent, CT Corporation." (Doc. 4 at 1.) There is no dispute that on January 7, 2013, CT Corporation signed the certified mail receipt sent to it by plaintiff. (*See* doc. 1-1 at 9.) However, the process was addressed to "Cotton States Insurance," as opposed to "Cotton States Mutual Insurance," and CT Corporation promptly returned the documents with a letter on the same day (i.e., January 7, 2013), stating that "[o]ur records indicate that we represent more than one entity beginning with the name: (Cotton States Insurance). In order that we may properly process the enclosed documents(s) [sic], we must be provided with the full name of the entity for which it is intended." (*Id.* at 11.)[3] Approximately a month-and-a-half later, on February 20, 2013, plaintiff resent a copy

---

[3] Because the court has referenced the letter, it is worth noting at this point that plaintiff filed a Motion to Strike the document, (*see* doc. 9), which was originally filed as Exhibit C to defendant's Notice of Removal, (*see* doc. 1-1 at 10-11). In her Motion, plaintiff argues that the Exhibit has not been authenticated under Federal Rule of Evidence 901, and that it contains impermissible hearsay under Federal Rule of Evidence 802. (Doc. 9 at 1.) In response, defendant supplemented the record by filing an Affidavit of CT Corporation's "Representation

of the original Summons and Complaint to CT Corporation, addressing it to "Cotton States Mutual Insurance Co." (Doc. 1-1 at 18.) On March 18, 2013—within 30 days of February 20, 2013, but not within 30 days of January 7, 2013—defendant filed a Notice of Removal with this court. (*See* doc. 1.) On April 4, 2013, plaintiff filed a Motion to Remand, (doc. 3), arguing that removal was not timely under 28 U.S.C. § 1446(b), (*id.* ¶ 2). Defendant responded, arguing that the time for removal under § 1446(b) started on February 20, 2013, when it received notice of the lawsuit, as opposed to January 7, 2013, when the Complaint and Summons were first delivered to CT Corporation. (Doc. 6 at 1-3.) Thus, the parties' main disagreement rests on whether defendant was properly served on January 7, 2013.

The court held a hearing on the Motion to Remand on June 10, 2013, (*see* doc. 7), but it informed the parties that it needed additional evidence in order to make a determination. Accordingly, it issued an Order, (*see* doc. 12), requiring each of the parties to submit supplemental evidence. On June 28, 2013, defendant submitted evidence showing that CT Corporation represents three companies containing the name "Cotton States," two of which are insurance companies: Cotton States Life Insurance Company and Cotton States Mutual Insurance Company. (Doc. 13-2 ¶ 4.) In addition, defendant's supplemental evidence

---

Services Advisor," which authenticates and attaches as an Exhibit the letter that is the subject of plaintiff's Motion to Strike. (*See* doc. 11; doc. 11-1.) After reviewing the parties' arguments and the relevant documents, the court has determined that the letter should not be stricken—primarily because before she moved to strike it, plaintiff herself relied upon it in her Brief in Support of Motion to Remand. (Doc. 4 at 2.) Accordingly, the Motion to Strike will be denied.

establishes that COUNTRY Mutual Insurance Company[4] owns or owned a portion of both Cotton States Mutual Insurance Company and Cotton States Life Insurance Company. (Doc. 13-1 ¶¶ 2-3.)  However, there is no evidence that any of these affiliated companies were aware of the lawsuit earlier than February 20, 2013: an Affidavit from CT Corporation's Representation Services Advisor states that CT Corporation's policy is to reject service and request more information if it cannot identify the entity that is being served, (doc. 13-2 ¶ 6), and an Affidavit from the Assistant General Counsel for Illinois Agricultural Association, the parent company of COUNTRY Mutual Insurance Company and its affiliated entities, states that the first time COUNTRY Mutual or any of its affiliated entities became aware of the pending lawsuit was on February 20, 2013, (doc. 13-1 ¶¶ 1, 5).  Finally, plaintiff's supplemental evidence shows that counsel for plaintiff did in fact receive the letter sent by CT Corporation stating that it could not identify the entity being served, and that receipt occurred at some point between January 7, 2013, and January 31, 2013.  (Doc. 14-1 ¶¶ 3-5.)

## II. DISCUSSION

### A. Requirements of Removal

Pursuant to 28 U.S.C. § 1441(a),

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

---

[4] As noted earlier, COUNTRY Mutual Insurance Company is the entity defending this action.

Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1556-57 (11th Cir. 1989)).  A removing defendant carries the burden of establishing the propriety of removal under § 1441 and, therefore, must establish the existence of federal jurisdiction.  *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citation omitted).  Because federal jurisdiction is limited, the Eleventh Circuit has held that cases removed from state court are to be remanded "where federal jurisdiction is not absolutely clear."  *See Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F. Supp. 1388, 1389 (M.D. Ala. 1998) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).

The statute governing removal, 28 U.S.C. § 1446(b), makes removal proper in two instances.  In the first instance, which is delineated in § 1446(b)(1) (formerly referred to as "first paragraph removal"), removal is based upon the plaintiff's initial pleading.[5]  Under § 1446(b)(1), the notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  Cases may also be

---

[5]  Prior to the Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112-63, 125 Stat. 758, § 1446(b) did not contain subsections distinguishing between what is now § 1446(b)(1) removal and § 1446(b)(3) removal.  What is now § 1446(b)(1) was found in the "first paragraph" of the former § 1446(b), and § 1446(b)(3) was found in the "second paragraph."  Despite the stylistic changes to the statute, the substance of removal procedure remains unchanged.

removed under § 1446(b)(3) (formerly referred to as "second paragraph removal").  A case not initially removable under § 1446(b)(1) may be removed under § 1446(b)(3) if the defendant files a notice of removal "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

In this case, plaintiff does not appear to contest the existence of diversity jurisdiction, (doc. 3 ¶ 2; doc. 4 at 2), and defendant has properly alleged its existence, carrying its burden and establishing that the parties are diverse and that the amount in controversy exceeds $75,000, (doc. 1 ¶¶ 7, 10-19).  Accordingly, the court is satisfied that it has original jurisdiction over the action.  Instead, the issue here is one of whether service on defendant was proper on January 7, 2013, in which case defendant would not have removed within the 30-day requirement of § 1446(b).[6]

---

[6] Though not entirely clear in its Response, it appears that defendant actually relies on 28 U.S.C. § 1446(b)(3). However, this is not the correct section for defendant to rely on under these facts.  The issue here is not whether the case *became* removable because either (1) the facts changed or (2) plaintiff amended her Complaint to allege new facts that were not in her original Complaint.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 760, 760 n.16 (11th Cir. 2010) (noting that this section of § 1446 encompasses situations where facts change and a case becomes removable, as well as those where "the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time" (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997))).  Rather, the issue is one of when, if ever, service was perfected, and whether defendant removed within the 30-day time frame under 28 U.S.C. § 1446(b)(1). While there might conceivably be an argument under 28 U.S.C. § 1446(b)(3), discussion of removal under 28 U.S.C. § 1446(b)(1) is the clearer choice on the facts of this case.

## B. Adequacy of Service of Process

Plaintiff argues that removal is untimely because she properly served defendant's registered agent, CT Corporation, on January 7, 2013. (Doc. 4 at 1-3.) She states that under Alabama law, a corporation may designate an agent to receive process by certified mail on its behalf, and that receipt by the agent, as in this case, constitutes effective service. (*Id.* at 4 (citing Ala. R. Civ. P. 4(c)(6)).) Therefore, she argues that because CT Corporation signed the receipt of service on January 7, 2013, it cannot "attempt unilaterally to 'un-do' service by 'returning' the summons and complaint." (*Id.*) Finally, in support of her arguments, plaintiff also cites to several cases which she claims have similar facts. *See Aranda v. Foamex Int'l*, 884 F. Supp. 2d 1186 (D.N.M. 2012); *Lowengart v. Cephus Capital Mgmt., LLC*, 677 F. Supp. 2d 1280 (N.D. Ala. 2009); *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, 03 CIV 9892 (GBD), 2004 WL 1574732 (S.D.N.Y. July 13, 2004); *Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd.*, 96 CIV. 2137 (JFK), 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997).[7]

In contrast, defendant argues that February 20, 2013, when plaintiff resent process with the correct name listed to CT Corporation, is the date that the 30-day time period for removal should be measured from.[8] (Doc. 6 at 2-3.) It argues that it was not until this date

---

[7] Defendant observes, and the court agrees, that each of these cases is distinguishable from the situation here.

[8] At the first telephone hearing on June 10, 2013, the court questioned counsel for the parties about whether actual service of process was sent on February 20, 2013, or whether CT Corporation was simply sent a copy of the Summons and Complaint from the first attempted

that CT Corporation could "ascertain with certainty" that defendant was the client that had been served. (*Id*.) In addition, it distinguishes the cases cited by plaintiff, noting that *Lowengart v. Cephus Capital Management., LLC*, 677 F. Supp. 2d 1280 (N.D. Ala. 2009), only addressed a minor spelling error in the defendant's name, (doc. 6 at 3), while the others—*Mastec Latin America v. Inepar S/A Industrias E Construcoes*, 03 CIV 9892 (GBD), 2004 WL 1574732 (S.D.N.Y. July 13, 2004), and *Recyclers Consulting Group., Inc. v. IBM-Japan, Ltd.*, 96 CIV. 2137 (JFK), 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997)—addressed situations where the defendant had contracted with the plaintiff to designate a particular registered agent, but neglected to actually retain or inform the agent, (doc. 6 at 1-2). Accordingly, when the agent received process, it was returned to the plaintiff in each case. (*Id*. at 2.) Defendant notes that though these courts found service to have been proper, the difference between these cases and its own is that here, CT Corporation was actually designated as its registered agent; it did not fail to appoint an agent.[9] *Id.*

---

service. Counsel stated that they believed it had just been a copy, and this appears to be correct, (*see, e.g.*, doc. 13-2 at 4 (Summons with date of December 19, 2012)), though plaintiff did resend the copy by certified mail, (*see* doc. 13-2 at 3; *id.* at 11). Accordingly, the court notes that it is possible defendant never received formal service at all, assuming that the January 7, 2013 attempt at service was not proper. However, because counsel for defendant stated that it considered service effected as of February 20, 2013, the issue is not one that the court will address.

[9] The inference in defendant's argument is that in each of those cases, the court's conclusion primarily rested upon the fact that the defendant's failure to receive notice of the lawsuit against it was due to its own error. Conversely, here, it was not defendant's own mistake that caused CT Corporation to return process to plaintiff; rather, it was due to an error on plaintiff's part. In addition, while defendant does not distinguish *Aranda v. Foamex International*, 884 F. Supp. 2d 1186 (D.N.M. 2012), a case cited by plaintiff to support the proposition that "the erroneous naming of a party in the caption [is] a technical defect," (doc. 4 at

After thoroughly reviewing the parties' arguments, the court agrees with defendant that the case is not due to be remanded. Despite the presumption in favor of remand and the burden on the defendant to show that removal is proper, *see Leonard*, 279 F.3d at 972, there is also a burden on the plaintiff to show that service is proper, *see Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*, 878 F. Supp. 2d 1252, 1263 (S.D. Ala. 2012) ("Once the sufficiency of service is brought into question, the plaintiff has the burden to prove proper service of process." (quoting *Cornwall v. Miami-Dade County Corr. & Rehab. Dept.*, No. 10–23561–CIV, 2011 WL 3878352, at *2 (S.D. Fla. Aug. 31, 2011))); *Truss v. Chappell*, 4 So. 3d 1110, 1112 (Ala. 2008) ("When service of process is contested, the plaintiff bears the burden of establishing proper service of process."). Here, because the issue is really not one of removal, but rather is one of service, the burden is on plaintiff to show that service was proper on January 7, 2013.

State law governs service of process that occurs before removal. *See Rentz v. Swift Transp. Co.*, 185 F.R.D. 693, 696 (M.D. Ga. 1998) ("The Court may consider the sufficiency of service of process after removal by first determining whether the plaintiff had complied with the state law provisions governing service of process during the period in which the action was pending in state court." (citing *Usatorres v. Marina Mercante Nicaraguenses,*

---

5), it is also distinguishable. The most obvious difference is that in that case, the court found that the defendant was probably given a "heads up" by the registered agent that it was being sued. (*Id.* at 1197.) In addition, the company that was named on the summons and the company that was the correct defendant were essentially one and the same entity, and both were named in the complaint so that the registered agent at least had reason to know which company was meant to be the recipient of the summons and complaint. (*Id.* at 1194, 1196.)

*S.A.*, 768 F.2d 1285, 1286 n. 1 (11th Cir. 1985))).  Accordingly, here the court looks to whether service was sufficient under Alabama law in order to determine whether defendant's subsequent removal was timely.  The Alabama Rule of Civil Procedure addressing service of process for corporations or other entities states that service may be perfected

> [u]pon a domestic or foreign corporation or upon a partnership, limited partnership, limited liability partnership, limited liability company, or unincorporated organization or association, by serving an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process.

Ala. R. Civ. P. 4(c)(6).  Further, Alabama Rule of Civil Procedure 4(i)(2)(C) states that

> *[s]ervice by certified mail shall be deemed complete and the time for answering shall run from the date of delivery to the named addressee or the addressee's agent* as evidenced by signature on the return receipt. Within the meaning of this subdivision, "agent" means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee.  Such agent's authority shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint or the court determines that the evidence proves the addressee did actually receive the summons and complaint in time to avoid a default.  An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default.  In the case of an entity included in one of the provisions of Rule 4(c), "defendant," within the meaning of this subdivision, shall be such a person described in the applicable subdivision of 4(c).

Ala. R. Civ. P. 4(i)(2)(C) (emphasis added).

Though it might seem that under the literal terms of the statute, plaintiff properly served defendant by sending the process to its undisputed and "specifically authorized" agent, the analysis does not end there.  It is a well-known principle of agency law that an

10

agent may be appointed to a specific task for a particular purpose and may hold a role as the principal's agent for some limited purposes, but not for others. *See Farm Credit of Nw. Fla., ACA v. R & B Const. of S. Ala., Inc.*, CIVA 08-0439-WS-C, 2009 WL 3245818, *1 n.3 (S.D. Ala. Oct. 5, 2009) ("[T]he mere fact that a person acts as the defendant's agent for some purposes does not necessarily mean that the person has authority [for all purposes]." (citation omitted)). In accordance with that principle, here, CT Corporation was not in fact acting as Cotton States Mutual Insurance Company's agent when it signed the certified mail receipt on January 7, 2013: it was only appointed as the registered agent for Cotton States Mutual (meaning, it only had authority) in cases where service of process was sent *to* Cotton States Mutual.

   The statute above clearly states that service should be deemed complete "from the date of delivery to the named addressee or the addressee's agent." Ala. R. Civ. P. 4(i)(2)(C). Here, however, the "named addressee," was the incorrect defendant (albeit a nonexistent one); accordingly, CT Corporation could not have been acting as the agent for Cotton States Mutual, who was not the addressee, when it signed the certified mail receipt. Implicit in the terms of the statute is the requirement that the "addressee" be correctly identified so that the agent knows on whose behalf it is acting. It is even more important to correctly identify the addressee in a situation such as the one in this case, where the agent (here, CT Corporation) operates as the authorized agent for more than one entity. A plaintiff should not be allowed to misname the defendant and still assume that the registered agent acts for him or her when

accepting service. Said differently, if the plaintiff misnames the defendant so that the agent cannot ascertain its identity, the agent is not operating as the intended defendant's agent at all for purposes of service; the agent must be aware—or at least have reason to know—of on whose behalf it is accepting service.[10] Moreover, the rationale behind the requirement in both the Federal Rules and the Alabama Rules that an authorized or general agent is required to receive process, as opposed to just any employee, is to ensure that the defendant receives notice of a lawsuit against him. *See Green v. Pike Manor, Inc*., 431 So. 2d 1316, 1317 (Ala. Civ. App. 1983) ("The rationale of all rules for service of process on corporations is that service must be made on a representative . . . as to make it a *priori* supposable that he will realize his responsibilities and know what he should do with any legal papers served on him."). This basic rationale is not met where a plaintiff sends a summons and complaint to the registered agent, but the agent cannot discern who the plaintiff is bringing the suit against. Therefore, because the court finds that CT Corporation was not defendant's agent for purposes of accepting a Complaint and Summons that it could not determine was addressed to defendant, service was not proper. *See, e.g.*, *Bank of Am. Corp. v. Edwards*, 881

---

[10] This requirement makes sense because, for example, had plaintiff misnamed Cotton States Mutual in the Summons and Complaint by referring to it as "Cotton States Life Insurance Company," no one—whether a party or a court—would claim that plaintiff had properly served process upon defendant, Cotton States Mutual. Rather, a court would say that service was improper because plaintiff served the *wrong* defendant. *See, e.g.*, *Allied Products Corp. v. Thomas*, 954 So. 2d 588, 589 (Ala. Civ. App. 2006) (briefly discussing motion to dismiss that was granted when wrong defendant was served). The result is no different where plaintiff named a company that does not exist, and from which CT Corporation could not identify the intended recipient. This, too, was serving the "wrong" defendant.

So. 2d 403, 406-08 (Ala. 2003) (no proper service over bank where plaintiff had served its subsidiary rather than bank's agent); *LVNV Funding, LLC v. Boyles*, 70 So. 3d 1221, 1232 (Ala. Civ. App. 2009) (default judgment against defendant void where plaintiff failed to properly serve agent of defendant).

The fact that plaintiff has not satisfied the service requirements of Rule 4 of the Alabama Rules of Civil Procedure would alone make service defective (and therefore removal proper) in this case. *See M.M. v. B.L.*, 926 So. 2d 1038, 1042 (Ala. Civ. App. 2005) ("Strict compliance regarding service of process is required." (citing *Aaron v. Aaron*, 571 So. 2d 1150, 1151 (Ala. Civ. App. 1990); *Wright v. Rogers*, 435 So. 2d 90 (Ala. Civ. App. 1983))). However, in addition, the court also notes that holding service to be proper here would cause substantial prejudice to defendant. Though prejudice is primarily a factor that federal courts look to when determining whether to grant relief from a default judgment because of some alleged defect in service of process under Federal Rule of Civil Procedure 4, *see, e.g.*, *Drill S., Inc. v. Int'l Fid. Ins. Co.*, 234 F.3d 1232, 1238 (11th Cir. 2000) (weighing prejudice to defendant), it is also appears to be relevant in the same context when analyzing whether service was proper under Alabama Rule of Civil Procedure 4, *see, e.g.*, *LVNV Funding, LLC v. Boyles*, 70 So. 3d 1221, 1230 (Ala. Civ. App. 2009) ("[S]ervice of process 'was in substantial compliance with the Federal and Alabama Rules of Civil Procedure and . . . any defects in service of process have not prejudiced [defendant] and are therefore harmless error.").

>Here, prejudice based on the defect in service seems particularly likely because
>
>>in a case, such as this one, where the insurance company is not notified by the designated agent for service of process . . . of a complaint filed against [it], *the insurance company's rights to removal would begin to run before it is aware that suit has been brought against it.* The United States Supreme Court has cautioned against such an approach, stating that it would be a strange result 'to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before [proper] service of a summons, i.e., before one is subject to any court's authority.

*Satterfield v. Fortis Benefits Ins. Co.*, 225 F. Supp. 2d 1319, 1323 (M.D. Ala. 2002) (emphasis added). Thus, prejudice is an incredibly important consideration in cases with facts similar to this one because a defendant's 30-day time window for removal could potentially run without it ever having been aware of a pending lawsuit. Moreover, here, if the court were to find in favor of plaintiff, that is exactly what would occur: the evidence shows that defendant had no knowledge of the pending lawsuit until February 20, 2013.[11] (*See* doc. 13-1 ¶ 5.) Accordingly, the prejudice that defendant would suffer if the court were to grant plaintiff's Motion to Remand provides additional support for why plaintiff's Motion should be denied.

Lastly, as a broader concern, if service of process addressed to a nonexistent entity, as it was here, were found to be adequate, future plaintiffs could purposefully run the time for removal by intentionally sending service to a defendant's registered agent, but addressing

---

[11] February 20, 2013, is 14 days after the time for removal would have run if service had been proper on January 7, 2013.

it to the wrong name.[12] Once service were returned to the plaintiff, he or she could then resend a copy containing the correct name after the 30-day removal window had closed to put the defendant on actual notice of the pending lawsuit. Circumventing the right to removal in such a way is not within the contemplation of § 1446, and both the Eleventh Circuit and the United States Supreme Court have expressed concern about situations that could deprive defendants of their right to remove:

> [allowing evidence from only plaintiffs to show that a case is removable] would provide plaintiffs with a trick by which they could make federal jurisdiction disappear. A diverse plaintiff could defeat federal jurisdiction simply by drafting his pleadings in a [certain] way. . . . That would subject the defendant's right to remove to the caprice of the plaintiff, which the Supreme Court has said . . . that we should not do. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) ("If [after removal] the plaintiff could . . . reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice."); *see also* 14B Wright et al., *Federal Practice and Procedure* § 3721, at 60 ("[R]emoval will be upheld when, by fraud, mistake, inadvertence, or artful pleading the plaintiff has concealed a legitimate ground of removal."); S.Rep. No. 109–14, at 9 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 10 ("The Committee notes that the purpose of [§ 1446(b) ] is to prevent plaintiffs from evading federal jurisdiction by hiding the true nature of their case.").

*Pretka v. Kolter City Plaza II, Inc*, 608 F.3d 744, 766 (11th Cir. 2010); *see also Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) ("The removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." (quoting *McKinney v. Bd. of Trustees of*

---

[12] The court is not suggesting and does not find that plaintiff in this case intentionally ran defendant's time for removal.

*Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992)) (internal quotation marks omitted)). These cases and the reasoning behind them also help to solidify the court's decision that plaintiff's Motion is due to be denied.

At its most basic, "the modern conception of service of process is primarily as a notice giving device," *LVNV Funding, LLC*, 70 So. 3d at 1231 (citation omitted), and where notice is not given due to a mistake on the part of the plaintiff under facts such as those in this case, the court cannot say that service is proper and require the defendant to suffer the resulting consequences. *See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 928 n.14 (11th Cir. 2003) ("[R]eceipt of actual notice is an important factor in considering whether service of process is adequate." (citing cases)). Accordingly, because service was not proper as of January 7, 2013, defendant has properly removed the case to federal court.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the court finds that it has diversity jurisdiction over this action, and that defendant has timely removed the case to federal court. Plaintiff's Motion to Remand, (doc. 3), is therefore due to be denied. Plaintiff's Motion to Strike, (doc. 9), is also due to be denied. An Order denying plaintiff's motions will be entered contemporaneously with this Opinion.

**DONE**, this 24th day of July, 2013.

                                        */s/ Sharon Lovelace Blackburn*
                                        SHARON LOVELACE BLACKBURN
                                        CHIEF UNITED STATES DISTRICT JUDGE